Judge Buckner,
delivered the opinion of the court.
This was a suit in chancery, instituted by Robert Harrison, jr., Robert Harrison and Josiah Harrison, against Dabney Finley, to adjust accounts, for payments made on money lent, and to obtain a de* cree for the amount of usurious interest received.
The hill‘contains the following allegations;
Robert Harrison, jr., borrowed of Finley, the appellant, on the 2d of March, 1818, the sum of $800, and agreed to give the lawful interest, and twenty per centum- per annum as usurious interest.
He then executed a note, with Robert Harrison and Reuben Harrison, his sureties, for $824, being the principal and legal interest, to said D. Finley, dated 2d March, 1818, and payable in one hundred and -eighty-two days after date.
On the 31st of August, 1818, that note was given up, and a.second note executed in lieu thereof, for $848 72 cents, payable in one hundred and eighty days, after *155 date, by Robert Harrison, j r., Robert Harrison, Reuben Harrison, Josiah Harrison, and John Harrison.
On the same day, the persons last mentioned executed to John P. Finley, a note for .$>163 78 cents, payable also, in one hundred and eighty days, after date, as the usurious interest agreed upon.
On the 27th of February, 1819, the two last mentioned notes were, in like manner, delivered to R. Harrison, jr., who, on that day, with Robert Hamson2. Reuben Harrison, Josiah Harrison and John Harrison, his sureties, executed a note for the aggregate amount, being 11,012 50 cents, to Dabney Finley, payable in one hundred and eighty, days, after date.
On the same day they executed a note-to John P. Finley for ‡ 128 58i cents, payable in one hundred and eighty days, after date, as the usurious interest.
About the time these twolast notes became due,Dabney Finley being indebted to Thompson Ewing, who was indebted to Finis Ewing, requested R. Harrison, jr., to execute a note to said F. Ewing, for the sum of $1,161, on a credit, and that it should discharge those two notes; and that for the excess, being $>21 931 cents, he should receive a credit on the sum which he would owe, as the usurious interest, on the $1,012 50 cents and the $126 581 cents, to the time that his note to. Ewing should be payable.
He accordingly executed a note for said sum of $1,161, to Ewing, with the same sureties, dated 19th -of August, 1819, payable one hundred and twenty-seven, days, after date.
On the same day this note to Ewing was executed, fhe same persons executed to John B. Finley, for the remainder of the usurious interest, a note for 73 ÍU cents, payable at the same time that the note executed to Ewing was to be paid.
It is also alleged, that these notes were written by Dabney Finley, and that those given to John P. Finley were executed to him, as agent or trustee for Dabney Finley, as a cloak, to disguise the true character of the transaction; and that Robert Harrison and Josiah Harrison had been compelled, by suit, to pay to Ewing the note executed to him; and had also paid that for ftie $73 61 cents.
*156 All the abóte notes (except that executed' lo Ewing/ are exhibited with the bill, and various interrogatories are propounded, calculated-to' extract from: Finley a full history of all those transactions.
Joshch Harrison having died, the suit was revived in the names of Reuben and Robert Harrison, his executors, and by an amended bill,. John P. Finley wan made a defendant.
Dabney Finley answered' very evasively, denying that Robert Harrison, and the executors of Josiah Harrison, had any cause of complaint against him, as he had-not received a-cent of usury from them; and insisting that the complainants could not jointly maintain their bill, as they had no jpiotinteresf in the demand.
lie docs not recollect how much money he lent, ait-hough it is not pretended that more than one loan was made; nor did his memory serve, as to the rate of im' terest; it exceeded six per cent., but lie does not think that it was as high as twenty-five per cent, per annum. He says that the note for $.1,012 50 cents was executed in consideration of a check, drawn in -favor of Robert Harrison, which Ire.- exhibits, in the following words: “Cashier of Christian hank, pay Robert Harrison or bearer $1,012 50 cents. 27th February, 1819# Dabney Finley;” that Harrison paid the notes for $818 72 cents, and for .$103 78 cents, with the money drawn on the check; and that, therefore, the two notes last mentioned were discharged more than five years previous to the institution of this suit. He, therefore, relies upon the statute of limitation, insisting that the complainant’s cause of action, if any they ever had, originated at the time those two notes wfere paid off'. In the negotiation of the transaction, as to the check, and the note executed for its amount, J. P. Finley acted as his agent. As to the note for $126 56i cents, that, as well as the one for $1,012 50 cents, was executed when he was absent, and he could not admit that it was usurious, and demands proof of it.
He admits the execution of the note to Ewing; as charged, except as to the allegations concerning the $21 934 cents; of that circumstance he had no recollection. With respect to the note for $73 6-1 cents, hel -insists, that after the execution of the note to Ewing.I *157 the relation of borrower and lender, between himself and Harrison, ceased to exist; and that it could not, tberefore, be for usury; and “he.protests against theprinripie of re-paying usury, where no money nor any else was on loan.” As between Harrison and Ewing, he admits it may have been usurious.
Exceptions to the answer having been sustained by the court, he filed an additional answer, not much less evasive than the other. He admits, however, that the notes executed to J. P. Finley, except the last, were for his benefit, and had been paid.
It is not important to consider J. P. Finley’s answer. He says, however, that Dabney Finley used his name in the notes executed to him; that he, in the absence of Dabney, negotiated the transaction with Harrison, concerning the check, and procured the execution of the note for $'128 564 cents, which included usurious interest.
Upon a final hearing of the cause, the court entered a decree, that the appellees recover from Dabney Finley the following sums, to-wit: ,§,‘168 78, cents; ,$128 56J, cents; $73 61 cents, and $21 93í cents, with interest on each sum, from the 19th of August, 1819, until paid, and costs, from which he appealed^ As to J. P. Finley, the hill was dismissed with costs.
We have been thus particular in noticing the statements of the appellant’s answer, because no deposition nor proof was offered on either part, except, that all the notes, (save those for $1,012 50 cents, and for $128 56.1 cents,) were shown to be in the hand writing of the appellant, and the first of the two3ast mentioned, bad his name endorsed on it, by himself.
It is certainly unnecessary to enter into any argument, for the purpose of showing that the appellant received, on $800, the amount lent, a most exorbitant interest. The allegations of the bill are definite and perspicuous. But one loan is charged to have been made. Seven notes bad been executed; five of them written by the appellant. They had all been paid, and were all, (except that executed to Ewing,) exhibited; yet, the appellant, wl)en called upon to answer, cannot recollect any thing'”more about the transactions, than he seems to have been forced- to recollect. *158 Few answers, which have come under our observation} exhibit such inexcusable evasions, and present in so deplorable a point of view, the preponderating influence of inord inate avarice over moral rectitude. It is very im probable that he should have forgotten the amount lent; but if his memory, as to that, had, indeed, failed him, when the notes were presented, it must certainly have been refreshed. Many usurers have most treacherous memories, when called upon to disgorge their illicit gains; but recollect, with wonderful tenacity of memory, to the last cent that may he due to them, and the hour at which it is to be paid. Such seems to be the case with the appellant. The facts alleged in the bill, were evidently within his knowledge; and under the circumstances of the case, must be considered as true.
Several complainants can not maintain a joint bill, against one defendant, for several matters entirely <listict and unconnected; nor can one complainant demand several distinct and disconnected matters against several defendants, in the same bill.
The same nicety and rig- or with respect to the joinder of persons sueing, are not observed in courts of chancery, which are exacted in a court of oomsue «¿tap, they must re-
*158 It was proper, therefore, to render a decree against the appellant, unless the objection, that the sureties improperly joined in the bill, be fatal; or unless the demand was barred by the statute of limitations.
As to what persons can or cannot properly join, as complainants in a bill, it may be remarked, that an important object, in the adoption of the general rules, applicable to the subject, is to preserve simplicity in the proceedings, and to prevent confusion, it is, therefore, laid clown as a settled rule, that several complainants shall not be permitted to maintain a joint bill against one defendant, for several matters, entirely distinct and unconnected; nor one complainant to demand several distinct and disconnected matters, against several defendants, in the same bill; see the case of Richardson, &c. vs. McKinson, &c., Littell's Selected Cases, 322, and Cooper’s Equity, 181, there cited.
But the same nicety and rigor, with respect to the joinder of persons sneing, are not observed in courts ojt' chancery, which might be exacted in a court of common law.
If A find B sue at law, they must recover jointly, if at all. But a different rule is often applicable in chancery. Thus, if several persons claiming, as distributees, file their bill for distribution of an estate, the chancellor would not dismiss the bill, because all might not be entitled to a decree.
where several persons ^«tríbutees nie their bill ibr distribuj;1™ °¿jl" es~ chancellor will not dismiss tlle bi,b themare not entitled to a decree.
In the case cited, from Littell’s Selected Cases, Andrew McKinson executed his obligation to Richardson, binding himself to convey to him, a tract of land, and to rebuild a saw mill; which bond, he transferred to Lauderman; Lauderman subsequently purchased of John McKinson, an adjoining "tract, for the conveyanee of which, he executed his obligation. Lauder-man and Richardson filed their bill against A. and J. McKinson to rescind both contracts. This court do-tided, that they could not jointly maintain the bill against John, but could against Andrew. In the opinion, in that case, the following language is used: “Richardson might, with propriety, join with Lauderman, in exhibiting the bill against Andrew McKinson, to rescind the contract, for the purchase of the 90 acres; because he was a party to that contract; but he could not join in a hill against John McKinson, to rescind the contract made with him, by Lauderman, for the .one hundred acres; for he was no party to that contract, and had no interest in either its execution or rcscision.” Now it is very clear, that Richardson and Lauderman could not have maintained a joint action at law against Andrew McKinson, upon the bond executed by him. If it was legally assignable, Lauderman as assignee could alone sue at law, and recover for a violation of its stipulations; if not assignable, Richardson could alone have maintained a suit on it. Whether however, it was the subject of assignment under the statute or not, as the benefit of it had passed to Lauderman, by the transfer to him, Richardson was not entitled upon a rescisión of the contract to any part of the money, decreed to he returned by Andrew McKinson. Yet he was permitted to join qs a co-complainant because he was a party to the contract; and in a suit to rescind.it, he was a necessary party. He might have been made a defendant, and it. would perhaps have been more regular, that he should have been presented to the court, in that attititude.
When the f 1,161 note was executed to Ewing, although no money was actually paid, it must be considered as a payment, by the principal to Dabney Finley. For so much, therefore, of that sum as well as of the note for $>73, as was usurious interest, Robert Harrison, jr. might have sued alone, and would have been entitled to a decree. But the appellees allege *160 that it was all paid to Ewing, by Robert Harrison and Josiah Harrison, his sureties. It is not expressly alleged, that the principal was insolvent; but that is rendered very probable, from the fact, that his sureties were compelled by suit, to pay the money for him. The money ought, therefore, when collected from Finley, to be paid to the sureties by Robert Harrison, jr. He seems to have been impressed with the propriety of that, by permitting them to join him as co-complainants, and praying for a decree to be entered for •them and himself jointly, no doubt, with the. intention of letting his sureties collect the amount as a partial indemnification for the money paid by them, for his benefit.
Indeed it is, from the foregoing considerations, very probable, that he had transferred to them, his right to demand and receive from Finley, the amount claimed. This might have been done with propriety; and had such a contract been made upon Finley’s refusal to pay, they might have maintained their bill in chancery to coerce payment, as was decided in the case of Breckenridge vs. Churchill and Gwathmey, III J. J. Marshall, II. But if that be the arrangement which was made between the parties, and it was intended to urge the claim of the sureties, for a decree upon such a contract between them and their principal, the fact of the transfer to them, should have been distinctly and positively alleged; and he ought to have been made a defendant to the bill; nevertheless, his appearing as a complainant with them, would have been sufficient, if tire assignment to him had been alleged by all of them. But although that has not been done, we are of opinion, that it would be an improper indulgence of technicality, to the prostration of justice, to turn Robert Harrison, jr. out of- court, and thereby permit Ms claim to be barred by the statute of limitations, because he and his sureties have joined as complainants. A decree ought to have been rendered in his favor, and such decree can be pleaded by Finley, in bar to any claim which he, Robert Harrison, jr. may attempt hereafter to set up for the same demand. No injury, can, under such circumstances, result to the appellant, on account of the joinder of the other Harrisons, as do-complainants in the hill.
Mills and Brown for 'appellee. appellants; CriUmdon, for
As io the plea of the statute of limitations, it cannot avail the appellant. He cannot be considered as having received the usurious interest until the execution of the note to Ewing, on tlie 19th of August, 1819; and the subpoena in chancery, which was issued on -the original bill, bears date in may, 1824. The statute of limitations does not commence to run, until the borrower can maintain bis suit to recover the usurious interest advanced; and su.'ely no such suit can be maintained, unless the usurious interest be .paid.
The attempt to make it appear, that the check on the Christian bank, was the consideration' of the note for $1012-50'cents was a shallow device, to evade the statue against usury; and cannot take the case out of its provisions.
But had the sureties been properly made complainants, the decree would still have been erroneous for l.wo reasóns; first, because current interest was improperly allowed, on the sums decreed to be paid; secondly, because the aggregate amout of those sums, is more than, injustice, they would be entitled to recover.
Robert Harrison, jr. must be 'charged with $800, the sum lent, and legal interest thereon, until the first note became due'; then with legal interest on the aggregate amount of principal and interest, until the second note became due; and then with legal interest on that amount, until the note executed to Ewing was due. For th'e difference between the sums of ,$¡1,101, with Interest thereon, from the time that the note for that sum to Ewing became due; and-of $73 :6i cents with interest, from the timetlie note for that sum became due, to the lime of rendering the decree, hereby directed to be entered; and the $800, and legal interest calculated as above directed, Robert Harrison, jr. will be entitled to a decree.
The decree of the circuit court must he reversed, ■and the cause remanded, with directions to dismiss the bill, as to the other complainants; and to enter a decree in favor of Robert Harrison, jr, according to the principles of this opinion.